## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN TAYLOR,** | : | |
| **Plaintiff** | : | **No. 1:22-cv-02070** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **SUPERINTENDENT KEVIN** | : | |
| **RANSOM, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

<u>Pro se</u> Plaintiff John Taylor ("Plaintiff"), who is a convicted and sentenced state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State Correctional Institution Dallas ("SCI Dallas") in Dallas, Pennsylvania.  He has commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983") and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, <u>et seq.</u>  (Doc. No. 1.) In accordance with the Prison Litigation Reform Act,[1] the Court has conducted an initial review of Plaintiff's complaint. For the reasons set forth below, the Court will dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.  However, the Court will grant Plaintiff leave to file an amended complaint.

---

[1]  <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

## I.    BACKGROUND

Plaintiff filed his Section 1983 and FTCA complaint in this Court on December 21, 2022.[2]  (Doc. No. 1.)  On that same date, Plaintiff also filed a motion for leave to proceed in forma pauperis and his prisoner trust fund account statement. (Doc. Nos. 2, 3.)  The Court, having reviewed Plaintiff's motion and trust fund account statement, will grant him leave to proceed in forma pauperis and will deem his complaint filed.

In his complaint, Plaintiff names the following Defendants: John Wetzel ("Wetzel"), a former Secretary of the DOC; George Little ("Little"), a former Acting Secretary of the DOC; Kevin Ransom ("Ransom"), the Superintendent at SCI Dallas; J. Eyer ("Eyer"), the Security Captain at SCI Dallas; Lieutenant B. Belles ("Belles"), the Lieutenant of the Restricted Housing Unit at SCI Dallas; Kyle Fagan ("Fagan"), a former Superintendent's Assistant at SCI Dallas; Dr. Prince ("Prince"), the Medial Director at SCI Dallas; Denise Johnson ("Johnson"), the Secretary for the Pennsylvania Department of Health; the Center for Disease Control ("CDC");

---

[2]  The complaint is dated December 21, 2022.  (Doc. No. 1 at 15.)  Although the Court did not receive the complaint until December 29, 2022, the complaint is deemed filed on December 21, 2022, pursuant to the prisoner mailbox rule.  See Pabon v. Mahanoy, 654 F.3d 385, 391 n.8 (3d Cir. 2011) (stating that "[t]he federal 'prisoner mailbox rule' provides that a document is deemed filed on the date it is given to prison officials for mailing" (citation omitted)).

and Dr. Rochelle Walenski ("Walenski"), the Director of the CDC.  (Doc. No. 1 at 1-5.)

In his complaint, Plaintiff generally avers that the events giving rise to his claims occurred at SCI Dallas "on or about" December 7, 2020, through December 23, 2020.  (Id. at 6.)   In support, Plaintiff alleges that, on the evening of December 7, 2020, he ate food, which caused him food poisoning.  (Id.)  Plaintiff alleges that he went to the infirmary where he spoke with Defendant Prince and a nurse.  (Id.) He alleges that he was given Pepto-Bismol, that his temperature was taken, and that his nose was swabbed.  (Id.)  Plaintiff alleges that, after five minutes, Defendant Prince sent Plaintiff back to his cell block.  (Id.)  Plaintiff alleges, however, that when he was returning to his cell block, eight (8) unidentified corrections officers "accosted" him.  (Id.)  More specifically, Plaintiff alleges that he was "stopped and pat-searched" (id.) and that he was taken back to the infirmary for reasons unbeknownst to him (id. at 6-7.)  Plaintiff alleges that the Sergeant who was present informed the "Doctor" that Plaintiff was to be placed in the Restricted Housing Unit ("RHU"), as per the orders of the "Security Captain."  (Id. at 7.)  Plaintiff alleges that he had done nothing wrong and that the "Doctor" and "Nurse" did not speak up for him.  (Id.)

Plaintiff alleges that he was subsequently taken to cell KB49 in the RHU without having been written up or without having received a report.  (Id.)  Plaintiff

3

alleges that the cell "had fecal matter and urine around the toilet and backwall area." (Id.) Plaintiff alleges that the following morning, he was told by a corrections officer that he was "on quarantine" in the RHU. (Id.) Plaintiff appears to allege that he did not have his personal property and commissary items with him in his RHU cell. (Id.)

Following his twenty-one (21) day quarantine, Plaintiff alleges that, on December 23, 2020, he was "cleared of having COVID-19" and was placed in cell FA1012. (Id.) Plaintiff alleges that, the following day, he was administered two COVID-19 tests. (Id.) Plaintiff alleges that a corrections officer returned to his cell and told him he was positive for COVID-19 and that he would be moved again. (Id. at 7, 8.) Plaintiff appears to dispute this diagnosis and claims that it was "impossible" for him to have COVID-19. (Id. at 7 (claiming that, before he was "even tested again[,]" the corrections officer told him he had COVID-19).)

Plaintiff alleges that, on December 28, 2020, he filed an inmate grievance with Defendant Fagan, complaining of "issues of cruel and unusual punishment, conditions of confinement, and failure to protect." (Id. at 8.) Plaintiff alleges that Defendant Fagan responded, explaining that Plaintiff's grievance was based upon two (2) separate events and that, therefore, Plaintiff must file two (2) separate grievances. (Id.) Plaintiff disputes this and claims that his grievance arose from a "single episode" on December 7, 2020, "wherein the [c]onstitutional violations occurred[.]" (Id.) Plaintiff acknowledges, however, that he ultimately complied and

that he submitted two (2) separate grievances.  (Id.)  In addition, Plaintiff claims that Defendant Ransom "circumvented" him from exhausting his grievances all the way to final appeal because Defendant Ransom never responded to Plaintiff's "first level of appeal to the Facility Manager[.]"  (Id.)  Plaintiff alleges that he subsequently received a "courtesy response on April 8, 2021" (id. at 8) and that he again appealed to the Facility Manager, but that Defendant Ransom never applied to this appeal either (id. at 8-9).

In addition, Plaintiff alleges that, on some unspecified date, he was given, among other medications, a medicine called "maderna/miderna/ or mederna."  (Id. at 9.)  Plaintiff alleges that, to this very day, he "still has no sense of smell in one nostril which remains clogged[,]" and that he has "a hard time breathing[,]" which did not occur until he contracted COVID-19.  (Id.)

As a result of these various allegations, Plaintiff claims that he suffered "COVID-19 related [p]neumonia, [s]inus damage in the form of an ongoing lingering infection, heightened and more frequent [a]sthma attacks, mild asphyxia, and painful [t]ics in [his] back and shoulders[,]" as well as kidney and liver damage. (Id. at 14.)  Plaintiff appears to assert violations of his constitutional rights under the First and Eighth Amendments to the United States Constitution pursuant to Section 1983.  (Id.)  Plaintiff also appears to assert negligence claims under the FTCA.  (Id.)

As for relief, Plaintiff seeks monetary relief on behalf of himself and for all DOC prisoners "who died while in custody[.]"  (Id.)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), district courts are required to review complaints in civil actions where a litigant is proceeding in forma pauperis.  See 28 U.S.C. § 1915(e)(2).  If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint.  See id.  In dismissing claims under § 1915(e)(2), district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (explaining that the "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (citation and internal quotation marks omitted)).

When evaluating the plausibility of a complaint, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the

light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."   See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010); Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017) (stating that the court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]" (citation and internal quotation marks omitted)).

Additionally, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se "is to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976).   A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

## III.   DISCUSSION

### A.   Section 1983

Plaintiff has filed his complaint, in part, pursuant to the provisions of Section 1983, asserting violations of the First and Eighth Amendments to the United States Constitution.  (Doc. No. 1.)  Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See id. Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

In a Section 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." See Iqbal, 556 U.S. at 676. Thus, in order to state a claim under Section 1983, a plaintiff must sufficiently allege that the defendants had personal involvement in the act or acts that the plaintiff claims violated his constitutional rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845

8

F.2d at 1207)).  Thus, a plaintiff may not rely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

### 1.      Claims against the CDC and Director of the CDC

Plaintiff has named the CDC and Defendant Walenski, the Director of the CDC, as Defendants in the complaint.  (Doc. No. 1 at 4.)  "To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

Here, Defendant CDC is not a "person" for purposes of Section 1983. Moreover, there are no well-pleaded allegations in the complaint which would show that Defendants CDC and Walenski are state actors for purposes of Section 1983. Accordingly, the Court finds that Plaintiff's complaint fails to state a Section 1983 claim upon which relief can be granted against Defendants CDC and Walenski. Plaintiff's Section 1983 claims against these Defendants will, therefore, be dismissed.

### 2.    Claims Against Former and Acting Secretaries of the DOC

In the context of Section 1983, the United States Court of Appeals for the Third Circuit has recognized two (2) theories of supervisory liability.  See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  Under one theory, a supervisor can be held liable if it is shown that he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  See id. (citation and internal quotation marks omitted) (alteration in original); Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016).  Under the other theory, a supervisor can be held liable if it is shown that he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  See A.M. ex rel. J.M.K., 372 F.3d at 586; Parkell, 833 F.3d at 330.

Here, the Court finds that there are no well-pleaded allegations in the complaint which would raise the inference that Plaintiff has established either one of these theories of supervisory liability against Defendants Wetzel and Little. Indeed, there are no allegations that these Defendants participated in, directed, or knew of and acquiesced in the management of Plaintiff's COVID-19 treatment or his placement in the RHU.  In addition, there are no allegations that they were deliberately indifferent to the consequences of a policy, practice, or custom that they

had established and maintained. While the complaint contains conclusory allegations against these Defendants, based upon their respective roles as the Secretary and Acting Secretary of the DOC (Doc. No. 1 at 11, 13), the law is clear that such conclusory allegations are not entitled to the assumption of truth. See Ashcroft, 556 U.S. at 679 (stating that "conclusions[ ] are not entitled to the assumption of truth[,]" and "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that while a court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions" (citation omitted)). As such, the Court finds that the complaint fails to state a Section 1983 claim upon which relief can be granted against Defendants Little and Wetzel. Plaintiff's Section 1983 claims against these Defendants will, therefore, be dismissed.

### 3. Claims Against the Secretary of the Pennsylvania Department of Health

In the complaint, Plaintiff has named Johnson, the Secretary of the Pennsylvania Department of Health, as a Defendant. (Doc. No. 1 at 12.) However, the Court finds that there are no well-pleaded allegations in the complaint which would raise the inference that Defendant Johnson was personally involved in the operation of SCI Dallas, the management of or response to COVID-19 at SCI Dallas, or the housing status of the inmates incarcerated there. As already set forth above,

"[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." See Rode, 845 F.2d at 1207 (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)); Ashcroft, 556 U.S. at 676 (explaining that, in a Section 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); Mincy v. Governor of Pennsylvania, No. 21-3263, 2022 WL 4115485, at *2 (3d Cir. Sept. 9, 2022) (unpublished) (concluding that "[t]he District Court [had] properly dismissed [plaintiff's] . . . claims against Governor Tom Wolf and the Secretary of the Pennsylvania Department of Health, which were not based on their personal involvement in the operation of SCI-Huntingdon" (citing Rode, 845 F.2d at 1207)). As a result, the Court finds that Plaintiff's complaint fails to state a Section 1983 claim upon which relief can be granted against Defendant Johnson. Plaintiff's Section 1983 claims against this Defendant will, therefore, be dismissed.

### 4. First Amendment Claim

The First Amendment, made applicable to the states through the Fourteenth Amendment, see Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a

redress of grievances." <u>See</u> U.S. Const. amend. I.   Prisoners retain those rights so long as they are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system.   <u>See</u> <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974); <u>Mack v. Warden Loretto FCI</u>, 839 F.3d 286, 298 (3d Cir. 2016) (recognizing this legal principle and citing <u>Pell</u>).

Here, Plaintiff appears to assert a First Amendment claim against Defendant Fagan on the basis that Defendant Fagan required Plaintiff to bifurcate his original grievance by filing two (2) separate grievances.  (Doc. No. 1 at 12.)  The Court, having reviewed these allegations, finds that Plaintiff's claim is without merit.  The complaint only asserts allegations that Plaintiff's grievance was mishandled.  Such allegations, however, do not in and of themselves give rise to a constitutional claim under Section 1983.  <u>See</u> <u>generally</u> <u>Glenn v. DelBalso</u>, 599 F. App'x 457, 459 (3d Cir. 2015) (unpublished) (stating that "[a]ccess to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under [Section] 1983" (citation omitted)); <u>Heleva v. Kramer</u>, 214 F. App'x 244, 247 (3d Cir. 2007) (unpublished) (affirming the district court's conclusion that the "defendants' alleged obstruction of prison grievance procedures does not give rise to an independent claim[,]" and "[p]risoners do not have a constitutional right to prison grievance procedures" (citation omitted)).  In addition, Plaintiff was free to file two (2) grievances, which he admits in the

complaint that he did.  Plaintiff was also free to bring a civil rights action in federal district court, which he has done here.  Thus, the Court finds that the complaint fails to state a First Amendment claim upon which relief can be granted against Defendant Fagan.  Plaintiff's First Amendment claim against this Defendant will, therefore, be dismissed.

### 5.    Eighth Amendment Claims

In the complaint, Plaintiff appears to be asserting Eighth Amendment claims against Defendants Ransom, Eyer, and Prince.  (Doc. No. 1 at 10-11.)  "The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'"  Glossip v. Gross, 576 U.S. 863, 876 (2015).  As explained by the United States Supreme Court, the Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation."  See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted).

Thus, in order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test[.]"  See Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Under the first prong, courts consider whether the deprivation was "'objectively, sufficiently serious[,]" that is, whether "a prison

official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities[.]'" See id. (quoting Farmer, 511 U.S. at 834).  Under the second prong, courts must consider whether the prison official was "'deliberate[ly] indifferen[t] to inmate health or safety.'" See id. (quoting Farmer, 511 U.S. at 834).

Regarding the first prong, life's necessities include food, clothing, shelter, medical care, and reasonable safety.  See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 418 (3d Cir. 2000) (stating that "when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety" (citing DeShaney v. Winnebago Co. Dep't of Social Svcs., 489 U.S. 189, 199-200 (1989))); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (explaining that the Eighth Amendment imposes a duty upon prison officials "to ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to ensure that prison officials] take reasonable measures to guarantee the safety of the inmates" (citations and internal quotation marks omitted)).

Regarding the second prong, a prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety"—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See Farmer, 511 U.S. at 837.  "The knowledge element of

deliberate indifference is subjective, . . . meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837-38)).

### a.    Defendant Ransom

Plaintiff alleges that Defendant Ransom failed to protect him from COVID-19 because Defendant Ransom failed to make periodic inspections of the housing units on K Block, failed to ensure that the cells on K Block were being cleansed and properly ventilated, and failed to make certain that staff and corrections officers were following all of the COVID-19 protocols at SCI Dallas. (Doc. No. 1 at 10.) Plaintiff claims that, because Defendant Ransom failed to do these things, Plaintiff was "forced into a filthy cell[,]" which was "possibly" the source of him contracting COVID-19. (Id.)

Having reviewed these allegations, the Court finds that the complaint does not contain well-pleaded allegations that Defendant Ransom acted with deliberate indifference—i.e., that he was subjectively aware of an excessive risk of harm to Plaintiff, which accompanied the conditions of Plaintiff's confinement in the RHU, but disregarded that risk. See Farmer, 511 U.S. at 837; Muata v. Hicks, No. 21-3210, 2022 WL 2526692, at *2 (3d Cir. July 7, 2022) (unpublished) (concluding that the "[p]laintiffs' allegations failed to establish that [the defendants] were deliberately

indifferent to the risks of COVID-19, and thus the District Court did not err in concluding that plaintiff failed to state a failure-to-protect claim"). Moreover, Defendant Ransom cannot be held liable for failing to eliminate all risk of Plaintiff contracting COVID-19. See generally Hope v. Warden York Cnty. Prison, 972 F.3d 310, 330 (3d Cir. 2020) (stating, in the context of immigration detention, that the government's failure to contain COVID-19 and eliminate all risk of exposure did not establish deliberate indifference). As such, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Ransom.

### b.    Defendant Eyer

Plaintiff similarly alleges that Defendant Eyer subjected Plaintiff to a "dangerous condition of confinement" when he ordered several corrections officers to place Plaintiff in a "filthy" cell in the RHU. (Doc. No. 1 at 10.) Much like Defendant Ransom, the Court finds that the complaint does not contain well-pleaded allegations that Defendant Eyer acted with deliberate indifference—i.e., that he was subjectively aware of an excessive risk of harm to Plaintiff, which accompanied the conditions of Plaintiff's "filthy" cell in the RHU, but that he disregarded that risk. See Farmer, 511 U.S. at 837; Muata, 2022 WL 2526692, at *2. As such, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Eyer.[3]

---

[3] Plaintiff avers, in passing, that he was placed in this RHU cell "as retaliation" for requesting Pepto-Bismol. (Doc. No. 1 at 10.) Even though the Court does not treat this averment as raising a First Amendment claim, the Court notes that making a

### c.    Defendant Prince

Plaintiff alleges that Defendant Prince failed to protect him from COVID-19 and caused him to undergo "dangerous living conditions" because he did not stop Defendant Eyer from placing Plaintiff in quarantine (Doc. No. 1 at 10), when Defendant Prince knew that Plaintiff "had tested negative for COVID-19 and had only consumed bad food (id. at 10-11).  The Court finds, however, that much like the allegations against Defendants Ransom and Eyer, the complaint does not contain well-pleaded allegations that Defendant Eyer acted with deliberate indifference— i.e., that he was subjectively aware of an excessive risk of harm to Plaintiff, but disregarded that risk.  See Farmer, 511 U.S. at 837; Muata, 2022 WL 2526692, at *2.

In addition, Defendant Prince has been named in the complaint as a medical doctor at SCI Dallas.  (Doc. No. 1 at 4.)  There is no indication that Defendant Prince had any authority at SCI Dallas to determine the housing status of the prisoners that are confined there.  Thus, Plaintiff's claim against Defendant Prince appears to be speculative, which is insufficient under the requisite plausibility standard.  See Twombly, 550 U.S. at 555 (explaining that "[f]actual allegations must be enough to

---

request for Pepto-Bismol is not conduct that is protected by the First Amendment. See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (stating that, in order to establish retaliation, the prisoner-plaintiff must show that "his conduct was constitutionally protected").

raise a right to relief above the speculative level"). As such, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Prince.

### 6.    Rule 8 of the Federal Rules of Civil Procedure

Plaintiff claims that Defendant Belles "was advertently used by [Defendants Ransom and Fagan] as an Inmate Grievance Officer in order to circumvent [P]laintiff's rights[.]" (Doc. No. 1 at 13.) In support, Plaintiff alleges that Defendant Belles, who is the regular Day Shift Lieutenant for the RHU, was not on duty the evening Plaintiff was placed in the RHU "under quarantine[.]" (Id. (explaining that Defendant Belles was "out on leave and was not due to return to work until after New Years . . . ").) In connection with these allegations, Plaintiff claims that Defendant Belles committed both "fraud and perjury" in order to "dissuade" Plaintiff from "continuing on with seeking remedy." (Id.)

The Court finds, however, that this claim fails to satisfy the basic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" See Fed. R. Civ. P. 8(a)(2). This short and plain statement must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which those claims rest. See Erickson, 551 U.S. at 93. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief[; it]

"has to show such an entitlement with its facts."  See Fowler, 578 F.3d at 211 (citation and internal quotation marks omitted).

Here, the Court finds that Plaintiff's claim against Defendant Belles fails to satisfy these basic pleading requirements because the allegations in support of his claim are broad, vague, and disconnected.  In addition, the Court finds that, although Plaintiff avers "fraud" and "perjury[,]" the facts supporting these purported legal theories have not been developed in the complaint.  As a result, the Court has been left—and Defendant Belles, if served, would also be left—to speculate as to what alleged conduct on his part gives rise to any wrongdoing.  Accordingly, because Plaintiff's complaint does not provide fair notice of his claims or the grounds upon which those claims rest, the Court finds that Plaintiff's complaint does not satisfy Rule 8 of the Federal Rules of Civil Procedure.  As a result, Plaintiff's Section 1983 claim against Defendant Belles will be dismissed.

### 7.  Seeking Monetary Relief on Behalf of Fellow DOC Inmates

Plaintiff's complaint seeks monetary relief for not only himself, but also for DOC prisoners "who died while in custody[.]"  (Doc. No. 1 at 14.)  There is no request, however, for class certification of the complaint and, more importantly, "[p]ro se litigants are generally not appropriate as class representatives."  See Hagan v. Rogers, 570 F.3d 146, 158-59 (3d Cir. 2009 (citation omitted); Lewis v. City of Trenton Police Dep't, 175 F. App'x 552, 554 (3d Cir. 2006) (unpublished)

(concluding that the plaintiff-prisoner, who was proceeding pro se, "may not represent a putative class of prisoners" (citations omitted)); Alexander v. New Jersey State Parole Bd., 160 F. App'x 249, 250 n.1 (3d Cir. 2005) (unpublished) (noting that "a prisoner proceeding pro se may not seek relief on behalf of his fellow inmates").  Thus, even though Plaintiff may represent himself as a pro se litigant in this action, he may not pursue Section 1983 claims on behalf of others, including a class of inmates within the DOC.  Consequently, to the extent that Plaintiff seeks to assert such class claims, these claims will be dismissed.

## B.     FTCA

"[T]he FTCA waives the sovereign immunity of the United States in its district courts for tort claims 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances [in which] the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"  Lomando v. United States, 667 F.3d 363, 372 (3d Cir. 2011) (quoting 28 U.S.C. § 1346(b)(1)) (alterations in original).  It "'does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court.'"  See id. (quoting In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001)); CNA v. United States, 535 F.3d 132, 141 (3d Cir.

21

2008) (explaining that "'[t]he cause of action in an FTCA claim . . . must come from state tort law" (citation omitted)).

Here, the factual allegations averred in the complaint concern individuals who are employed by the DOC, a Pennsylvania state agency. In addition, the claims asserted in the complaint are based upon alleged civil rights violations that occurred while Plaintiff was incarcerated at SCI Dallas, a Pennsylvania correctional institution. There are no allegations that would raise a reasonable inference that any employee of the United States was personally or affirmatively involved with such alleged violations. As a result, the Court finds that Plaintiff has not plausibly stated an FTCA claim upon which relief may be granted. Such claims will, therefore, be dismissed.

### C. Leave to Amend

The only remaining issue is whether Plaintiff should be granted leave to amend his complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that it would be futile to grant Plaintiff leave to amend with respect to the following claims: any Section 1983 claims against Defendants CDC and Walenski; the First Amendment Section 1983 claim against Defendant Fagan; the FTCA claims; and the claim for monetary relief on behalf of other DOC prisoners. However, the Court cannot say that granting Plaintiff leave to amend with respect to his remaining Section 1983 claims would be futile and, thus, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above.

Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. The amended complaint shall set forth Plaintiff's claims in short, concise, and plain statements as required

by Rule 8 of the Federal Rules of Civil Procedure. Finally, Plaintiff is cautioned that neither conclusory allegations nor broad allegations will set forth a cognizable claim.

## IV. CONCLUSION

To conclude, the Court will dismiss Plaintiff's complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2). The Court will grant Plaintiff leave to file an amended complaint. An appropriate Order follows.

Dated: January 31, 2023                               s/ Sylvia H. Rambo
                                                                    SYLVIA H. RAMBO
                                                                    United States District Judge